UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 12-253-KSF

BOYD VAN WINKLE, JR                                                                           PLAINTIFF

v.                                                **OPINION & ORDER**

LIFE INSURANCE COMPANY OF NORTH
AMERICA, d/b/a/ Cigna Group Insurance                                                 DEFENDANT

\* \* \* \* \* \* \* \* \* \*

This matter is currently before the Court upon the motion [DE #11] of the plaintiff, Boyd Van Winkle, Jr., for *de novo* review of the denial of his application for long-term disability benefits under an ERISA-governed benefit plan offered by his employer, Kentucky Utilities, and issued and administered by the defendant, Life Insurance Company of North America, d/b/a/ Cigna Group Insurance ("LINA"). Also before the Court is Van Winkle's motion to strike records from LINA's proposed administrative record [DE #11]. These matters are ripe for review.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

As an employee for Kentucky Utilities ("KU"), Van Winkle was a participant in KU's ERISA-governed Benefit Plan. LINA issued a long-term disability ("LTD") policy ("the Policy") to KU to provide benefits under the Plan. LINA is also the administrator of the LTD Plan. Van Winkle remained insured under the LTD coverage when he became disabled from employment on October 12, 2010.

1

Van Winkle's short-term disability claim was approved for the maximum duration of six months because of his inability to perform his heavy duty operation as a technician for KU. Prior to the end date of these benefits, Van Winkle applied for LTD benefits on March 8, 2011 [AR 1136-46].[1] Van Winkle provided LINA with authorizations to obtain his medical records [AR 1135-46]. He also applied for Social Security disability benefits. LINA requested medical information from Van Winkle's providers in order to assess his claim. [AR 2271-72, 2290-92]. Despite making second and third requests to some of Van Winkle's providers, LINA did not receive the requested information [AR 2269, 2267]. Although Van Winkle contends that he had provided the necessary medical records to LINA's representative, a company called Allsup, LINA contends that it never received these records. On April 21, 2011, LINA denied Van Winkle's LTD claim, noting that it had exhausted all efforts to obtain medical information from his providers and thus had no information on file to show proof of disability [AR 1125-26].

Van Winkle administratively appealed the denial of LTD benefits on July 27, 2011 [AR 119 *et seq*]. Included in his appeal were medical records and the opinion of his physician that he was "totally and permanently disabled" from a number of medical conditions. This appeal was denied by letter dated September 1, 2011 on the grounds that the records from the Veterans Administration Hospital ("VA") were not detailed enough to show how his alleged conditions impaired him from his job [AR 110-11, 117]. The letter also informed Van Winkle that he was administratively required to appeal the decision before filing a lawsuit and that he had 180 days to do so [AR 110-11].

---

[1] While LINA is the entity legally responsible for payment of benefits, communications regarding Van Winkle's claim for benefits were from "Cigna Group Insurance." The Court will use the names LINA and Cigna interchangeably.

On February 28, 2012, Van Winkle again appealed the decision to deny his LTD claim [AR 1656 *et seq*.] This appeal contained additional records from the VA (along with opinions of VA physicians that Van Winkle was totally disabled), independent psychological testing and opinion from a psychologist and a vocational expert stating that Van Winkle was disabled, and statements from Van Winkle's family and a co-worker about his inability to perform his work. Over the next few weeks, Van Winkle's counsel made multiple inquiries about the status of the appeal and was informed that a "behavioral health" review had been completed; however, it is unclear from the record if such review had been undertaken at this time [AR 24, 27].

LINA did review Van Winkle's claim, but apparently not until July 3, 2012 [AR 1655]. On that day, LINA sent a letter acknowledging that it had received the appeal and that it would now begin review by referring it to its disability appeals team [AR2236-37]. On July 16, 2012, LINA, by letter, requested an extension of time to respond to the appeal, asking for an additional 45 days [AR 2231].

Also on July 16, 2012, Van Winkle commenced this action, on the grounds that his claim was deemed denied and exhausted by LINA's failure to make a decision within the time allowed by the regulations [DE #1-1]. Summons was served on LINA on July 24, 2012. Shortly after receipt of summons, LINA for the first time forwarded Van Winkle's records to two doctors: Dr. Marcus Goldman and Dr. Siva Ayyar, requesting a peer review [AR 1633-42, 1643-47]. Then on September 6, 2012, while this litigation was pending, LINA issued a denial letter, claiming that Van Winkle could perform his heavy duty job, relying on the peer review reports of Dr. Goldman and Dr. Ayyar [AR 2226-2229].

This Court issued its Scheduling Order on October 22, 2012, ordering that the parties file their memorandum regarding the appropriate standard of review [DE #8]. Additionally, the Court ordered that the Administrative Record be filed under seal no later than October 30, 2012, and that Van Winkle shall file any objections and/or motions regarding the administrative record no later than November 30, 2012. In accordance with this Order, Van Winkle filed his "Motion for De Novo Review and Motion to Strike Records from LINA's Proposed Administrative Record" [DE #11]. LINA filed its response to Van Winkle's motion on December 10, 2012 [DE #12].

## II. ANALYSIS

### A. STANDARD OF REVIEW

It is well settled that courts review challenges to benefit determinations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, "under the *de novo* standard, unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *University Hospital of Cleveland v. Emerson Electric*, 202 F.3d 839, 845 (6th Cir. 2000)(citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the benefit plan gives the plan administrator discretion, the decision is to be reviewed under an arbitrary and capricious standard. *Id.* There is no dispute in this case that the plan vests LINA with discretionary authority, and as a result, the default standard of review is the arbitrary and capricious standard.

The issue in this case, however, is not whether the language in LINA's certificate of insurance gives it discretionary authority, but whether LINA loses any discretion that it may have had because of its alleged failure to exercise its discretion in accordance with the ERISA statute and regulations. ERISA was enacted by Congress to establish procedural safeguards to ensure that

fiduciaries such as LINA administer benefit plans "solely in the interest of the participants and beneficiaries." 29 U.S.C. §§ 1104(a)(1) and 1001(b). Under ERISA, the Secretary of Labor is given authority by Congress to enact regulations and set deadlines for the administration of employee benefit claims. 29 U.S.C.§§ 1133 and 1135. Those rules and regulations are contained in 29 C.F.R. 2560.503-1, titled "Claims procedure."

Relevant to this case are the regulations requiring a benefits determination on appeal to be made within a certain time. 29 C.F.R. § 2560.503-1(i)(4). Specifically, decisions on disability claim appeals must be made within 45 days of submission of a disability appeal, but an administrator may take up to a maximum of 90 days total if it notifies the claimant within the first 45 days that an additional 45 days is necessary because of "special circumstances (such as the need to hold a hearing, if the plan's procedures provide for a hearing)." 29 C.F.R. 2560.503-1(i)(1) and (i)(3). Furthermore, the regulations require a plan administrator to notify the claimant, during the requisite time period, of, *inter alia*, the "specific reason or reasons for the adverse determination," and "the specific plan provision on which the benefit determination is based." 29 C.F.R. § 2560.503-1(j). Failure to follow these procedures is governed by 29 C.F.R. 2560.503-1(l), which provides:

> (l) **Failure to establish and follow reasonable claims procedures.** In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

Here there is no dispute that LINA made no decision on Van Winkle's claim within 45 days of submission, and did not notify Van Winkle of any special circumstances requiring a 45-day

extension during the first 45 days. As a result of these regulations, Van Winkle's claim was deemed exhausted 45 days after he filed the appeal on February 28, 2012.

Under these circumstances, Van Winkle contends that LINA's belated claim "denial" should not be given any deference. In making this argument, Van Winkle attempts to distinguish the Sixth Circuit's holding in *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). In *Daniel*, the plan administrator failed to render a timely decision; however, the Sixth Circuit held that this failure did not give rise to a change in the default standard of review, holding that "the standard of review is no different whether the appeal is actually denied or is deemed denied." *Id*. at 267.

Van Winkle contends that this case is no longer binding and is not sound for a number of reasons. First, Van Winkle argues that *Daniel* was decided before the Supreme Court's holding in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), where it held that the default standard of review in an ERISA action is *de novo*. *Daniel*, however, was decided under its earlier precedent that the default standard was "arbitrary and capricious." According to Van Winkle, the *Daniel* court's fallback on an arbitrary and capricious standard of review because it was the default at the time is not binding on this court in light of the subsequent decision in *Bruch*, making the default standard of review *de novo*. Next, Van Winkle points to a statement by the Sixth Circuit in *University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 846 n.4 (6th Cir. 2000), that "there is undeniable logic in the view that a plan administrator should forfeit deferential-review by failing to exercise its discretion in a timely manner." Based on this statement, Van Winkle argues that the Court should look to the decisions of other federal courts on this topic, holding that *de novo* review is appropriate in cases where there is a denial for failure to make a claim decision. *See e.g., Nichols v. Prudential Life Ins. Cos. of America*, 406 F.3d 98, 109 (2nd Cir. 2005); *Gritzer v. CBS,*

*Inc.*, 275 F.3d 291, 295-96 (3rd Cir. 2002); *Jebian v. Hewlett-Packard Co.*, 349 F.3d 1098, 1103 (9th Cir. 2003); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003).

On the other hand, LINA contends that *Daniel* remains controlling law. Moreover, LINA argues that many of the cases from other circuits relied upon by Van Winkle were decided under a prior version of the regulation, which provided that "[i]f a decision on review is not furnished within [the permitted] time, the claim shall be deemed denied on review." 29 C.F.R. § 2650.503-1(1)(h)(4)(1999). However, LINA points out that the Department of Labor amended the ERISA regulation in 2000 to omit the "deemed denied" language and enacted 29 C.F.R. § 2650.503(l), which provides:

> Failure to establish and follow reasonable claims procedures. In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2650.503(l). Under this new regulation, a claim is no longer deemed denied, but rather deemed exhausted. LINA contends that this change in the regulation undercuts the rationale in the cases relied upon by Van Winkle.

After careful consideration, the Court agrees with LINA that *Daniel* remains controlling law. While *University Hospitals of Cleveland* did note that "there is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner," it explicitly chose not to rule on the issue leaving the *Daniel* holding intact. *University Hospitals of Cleveland*, 202 F.3d at 846, n.3 ("we need not decide . . . whether any failure to timely decide [plaintiff's administrative appeal] should trigger a less deferential standard of review").

While other circuits may disagree, this Court is bound by the *Daniel* decision that a belated claim denial does not result in a change in the default standard of review. As a result, the appropriate standard of review in this case is whether LINA's decision to deny benefits was arbitrary and capricious based on the discretion afforded to it in the plan document.

    B.    **PEER REVIEW REPORTS**

Van Winkle contends that the reports of Dr. Goldman and Dr. Ayyar should be stricken from the record because the Court's review should be limited to the administrative record that existed at the time the denial of benefits determination was made. He argues that the denial occurred the forty-fifth day after LINA received the appeal, based on the regulations requiring LINA to act by that date. On the other hand, LINA argues that Van Winkle's appeal was not denied until September 6, 2012 - after the peer review reports were included in the administrative record. Because the regulations deemed Van Winkle's appeal "exhausted" rather than "denied," LINA argues that it is entitled to process an administrative appeal after it has been deemed exhausted. According to LINA, it merely made a procedural error in failing to timely process Van Winkle's claim, and courts routinely remand cases like this where there is no evidence of bad faith.

The Court must decide whether the administrative record closed once the appeal was deemed exhausted (45 days after submission of the appeal), or once LINA issued a final decision (September 6, 2012). This is a close case, and neither side has cited controlling caselaw based on a similar factual pattern presented here. Here, a remand and reconsideration has essentially occurred. While the peer review reports were not a part of the record at the time the claim was deemed "exhausted," LINA did continue to process the claim and considered the peer review reports before making its actual denial on September 6, 2012 and before this Court has conducted any review. Thus, this is

not a case where the Court is being asked to review documents not first presented to administrators as in *Perry v. Simplicity Engineering*, 900 F.2d 963, 967 (6th Cir. 1990), where the Sixth Circuit refused to permit a district court to consider evidence for the first time. Instead, this is a case where LINA failed to follow the time frame set out in the regulations, but ultimately reached a decision based, in part, on the peer review reports. While the Court sympathizes with VanWinkle and does not condone LINA's delay in decisionmaking, it will allow the peer review reports to remain in the administrative record at this time. The Court, however, reserves the right to revisit this decision upon submission of the parties' briefs on the merits of the decision to deny benefits to Van Winkle. Accordingly, the Court will deny, without prejudice, Van Winkle's motion to strike the peer review reports from the record.

### III. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) Van Winkle's motion for *de novo* review [DE #11] is **DENIED**;

(2) Van Winkle's motion to strike portions of the administrative record [DE #11] is **DENIED WITHOUT PREJUDICE**; and

(3) the Court will review this matter under the arbitrary and capricious standard of review.

This May 8, 2013.



Signed By:

*Karl S. Forester* KSF

**United States Senior Judge**